IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 3, 2026

**STATE OF TENNESSEE v. LOUIS THOMAS SMITH**

**Appeal from the Circuit Court for Lauderdale County
Nos. 11362, 11364   A. Blake Neill, Judge**

_____

**No. W2025-00546-CCA-R3-CD**

_____

Defendant, Louis Thomas Smith, appeals the Lauderdale County Circuit Court's revocation of his supervised probation and the imposition of his original, ten-year sentence. Defendant contends that the trial court abused its discretion by finding that he violated the terms of his probation by absconding and asks this court to reverse that finding and "remand the case back to the trial court as a technical violation." Following a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and KYLE A. HIXSON, JJ., joined.

Bo Burk, District Public Defender; and David A. Stowers, Assistant District Public Defender, for the appellant, Louis Thomas Smith.

Jonathan Skrmetti, Attorney General and Reporter; Park Huff, Assistant Attorney General; Mark E. Davidson, District Attorney General; and Julie K. Pillow, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

In June 2022, the Lauderdale County Grand Jury indicted Defendant, in case number 11362, on five counts of assault and on one count each of possession with the intent to deliver .5 grams or more of methamphetamine, a Schedule II controlled substance; theft

under $1,000; and resisting arrest. The grand jury also indicted Defendant, in case number 11364, for one count of theft over $1,000 but less than $2,500.

On September 6, 2022, Defendant pled guilty, as a Range I standard offender,[1] to possession with the intent to deliver .5 grams or more of methamphetamine, a Schedule II controlled substance; theft under $1,000; and five counts of assault, in case number 11362. The State announced the following factual basis for Defendant's plea:

> [In case number] 11362, this was an event that occurred May 15, 2021 involving [Defendant]. He was found in possession of methamphetamine over .5 grams, five counts of assault with regard to his encounter with law enforcement, a theft with regard to . . . a phone . . . owned by Michael Davis.
>
> . . . .
>
> With regard to the meth, it was sent to the lab, did come back to be methamphetamine in the amount of .76 grams. Facts would have been that officers responded to 104 Crescent, Apartment D with regard to two individuals fighting. Officer Hankins spoke to [Defendant], who stated someone had [thrown] some kind of chemical on him. They called for EMS. They were running [Defendant's] identification, found he had two outstanding warrants out on him. He was transported to the hospital.
>
> The officer then spoke with . . . Jimmy Jones and Michael Davis. Jones lives at 104 Crescent and was a witness. Jones and Davis both said that [Defendant] hangs out [with] Jones. When Davis showed up, [Defendant] accused him of throwing some kind of chemical on him, and then Davis said he attempted to leave and [Defendant] took off his clothes and then [attacked] him . . . . Davis said during the fight [Defendant] took his phone. And Officer Parker did retrieve the phone across the road.
>
> During the encounter at the hospital, [Defendant] became combative, and officers had to use restraint with regard to his actions. So there would have been testimony with regard to him assaulting numerous Ripley police officers at the hospital when he became kind of irate. That would have been [Officers] Kenneth Hankins, Jordan Shepard, and Colton Broyles, and Sam Parker.

---

[1] The record reflects that Defendant was a career offender but that the State allowed him to plead guilty as a standard offender as part of the plea agreement in case number 11362.

Pursuant to a plea agreement, the trial court sentenced Defendant to ten years with a thirty percent release eligibility for possession with intent to deliver .5 grams or more of methamphetamine and to eleven months and twenty-nine days on each of the remaining offenses. The trial court ordered all counts to run concurrently, for a total effective sentence of ten years, and suspended the sentence to supervised probation after the service of 120 days.

Defendant also pled guilty, as a Range II multiple offender, to theft over $1,000 but less than $2,500 in case number 11364. The State announced the following factual basis for this guilty plea:

> [In case number] 11364[, Defendant] is pleading to a theft over one thousand with regard to property of Tyler Reed. This would have been, I think it was approximately $1,200. [Defendant] was charged along with two codefendants, Elijah Lambert and a Carla Madena. Mr. Lambert just pled recently and would have testified that they were together at Tyler Reed's house, that Tyler Reed passed out drunk. That Lambert heard [Defendant] tell Carla that if Carla didn't take the money that was in Reed's wallet, then [Defendant] would take it.
>
> Money was taken. The three defendants left Tyler Reed's home and divided the money. Lambert got $205 and [Defendant] and Carla got $410. And Mr. Tyler Reed also would have testified that these individuals were at his home, and that he had approximately $1,300 in his wallet and that was taken from him.

Pursuant to the plea agreement, the trial court sentenced Defendant to 4 years at 35%, suspended to supervised probation. The court ordered the sentence in case number 11364 to run concurrently with Defendant's sentence in case number 11362.

On October 10, 2022, the trial court entered an order allowing Defendant to serve his remaining time on weekends. The order specified:

> Defendant is to be released from the Lauderdale County Jail on October 10, 2022, and is to report back to the Lauderdale County Jail on October 14, 2022, at 7:00 p.m. to begin his weekend service. He will then report each weekend thereafter until he has finished serving the 120 days of his original sentence.

On October 18, 2022, the trial court issued a violation of probation warrant, which alleged that Defendant failed to report to jail on October 14, 2022, as ordered. Following

a hearing on October 31, 2022, the trial court revoked Defendant's weekend service and ordered Defendant to serve "the remainder of his 120 days in custody" before being released to supervised probation.

On February 22, 2023, the trial court issued a second violation of probation warrant, which alleged that Defendant failed to report for intake as ordered after his release from the Lauderdale County Jail on December 15, 2022. The warrant further alleged that Defendant's probation officer attempted to conduct a home visit with Defendant on January 12, 2023, but that Defendant was "unable to be located" at his address.

On June 22, 2023, a third probation violation warrant was issued, alleging that Defendant had been arrested on June 8, 2023, and charged with tampering with evidence, possession of a Schedule II controlled substance "with intent," possession of drug paraphernalia, and failure to appear. At a revocation hearing, Defendant admitted that he had violated the terms of his probation. In an order filed September 5, 2023, the trial court revoked Defendant's probation and ordered that Defendant serve ninety days in jail before being returned to probation.

On February 29, 2024, the trial court issued a fourth probation violation warrant. The warrant alleged that Defendant had violated probation by failing to report for intake after being released from jail on December 1, 2023, and by failing to report to his probation officer in January and February 2024. Additionally, the warrant alleged that, on February 7, 2024, Defendant's probation officer attempted to conduct a home visit but that Defendant was "unable to be located at [the] address" and that a resident of the home stated that Defendant did not reside in the home. At a hearing, Defendant stipulated to the violation, and the trial court revoked Defendant's probation and ordered him to serve 274 days in jail before being returned to supervised probation.

On January 13, 2025, the trial court issued a fifth violation of probation warrant. This warrant alleged that, after being released from jail on November 4, 2024, Defendant failed to report for intake; that Defendant had not reported to his probation officer in November and December 2024; and that his probation officer attempted to conduct a home visit on December 23, 2024, but was unable to locate Defendant at the address.

At a hearing conducted March 19, 2025, the State announced that Defendant

> will stipulate to what is in the report itself, not technically the language of absconding, but that he did not report for intake. That he was unable to be located at his address, at what he'd given the probation officer, 145 Maple Hill Circle. And that he did not report in the months of November or December.

Defendant testified that, upon his arrest for the most recent violation warrant, he was drug tested and that he "passed for everything." Defendant said that he had not taken any illegal substances for over a year and a half. He agreed that, after being released from jail in November 2024, he failed to report to his probation officer. When asked why he did not report, Defendant testified, "Basically to be honest with you, at home with my mom, and just really didn't have a ride" to the probation office in Dyersburg. Defendant said that he lived with his mother in Ripley because she was "real sick" and on hospice care. He stated that he helped his mother get out of bed and helped feed her. Defendant agreed that he provided his probation officer with a different address—145 Maple Hill Circle—as his residence; he said that, when he was released from jail, this address was where he got his mail and slept. Defendant acknowledged that he "missed" his probation officer's home visit in December 2024. Defendant claimed that he had called his probation officer seven to ten times, but "she never was there." He said that he left her a message to set up another home visit but that "she never did respond back to me. If she did, I missed the call if I was at work or something."

Defendant stated that his sister used to take him to the probation office but that she passed away. He said that he had been unable to arrange alternate transportation but acknowledged that he "could have probably asked" his co-worker, Wayne Douglas. Defendant acknowledged that he had been on probation previously and that he understood he had to report. He agreed, however, that he failed to report in November and December 2024. Defendant testified that, before his arrest on the most recent violation warrant, he had been working for Mr. Douglas, "[c]utting yards, moving furniture or checking around the house, anything him and his wife needed me to do." When Defendant was asked if he had "a working phone at the time[,]" Defendant responded, "No, sir, house phone."

On cross-examination, Defendant stated that his mother lived on Northcrest, which was within walking distance to the courthouse in Ripley. He said that he was not aware that he could have met with his probation officer at the courthouse. Defendant agreed that this was the third time his probation had been violated because he had failed to report for intake but said that "it won't happen again."

Wayne Douglas testified that Defendant had been working for him before Defendant's most recent arrest. Mr. Douglas stated, "I do go and pick him up and I take him home. If we go to Memphis, I feed him, take care of him. See that he gets home and put out at his mother's house. That's where I've always picked him up." He said that Defendant had a cell phone. Mr. Douglas said that he would have driven Defendant to the probation office in Dyersburg if Defendant had asked for a ride.

At the conclusion of proof, the trial court found that Defendant violated the terms of his supervised release and revoked Defendant's probation. The court stated:

So a violation of probation hearing is a two-part hearing. The first part is whether he violated his probation. He agreed that he violated the terms of his probation by not reporting. He didn't agree that it was absconding, but the [c]ourt finds that it was absconding. He never reported for intake when he was released from jail, and then he was never at home when the probation officer went by, and then he never made any effort to report. I don't know what else absconding would be, especially when you've done it three times before.

So then the second part of the hearing is to determine what the consequences of the violation are. I am supposed to consider things like his previous attempts at probation, which I've already been through that with Mr. Douglas and with [defense counsel]. That this is his -- really this is his fourth attempt. The first attempt was to allow him to do weekends, he didn't do it. Then he absconded, put in jail for 90 days then he absconded, put in jail for 274 days and now here we are again.

I am supposed to consider his criminal history. He's got six prior felonies before these convictions. These convictions added two more felonies. Six more misdemeanors. Five of those being misdemeanor assault charges. And then all of his felonies for the most part are selling methamphetamine. So whether he's using it or not while he's out, he very well could be selling it. No drug test that would tell us that.

. . . . At the end of the day, the [c]ourt's orders have to mean something. And at this point, you haven't shown that they mean anything to you. That you're going to do what you want to do, when you want to do it.

The court ultimately found that Defendant was not "a good candidate for supervised release" and ordered that Defendant serve his sentence in confinement. This timely appeal follows.

## Analysis

On appeal, Defendant contends that the trial court abused its discretion by finding that Defendant violated the terms of his probation by absconding instead of "failing to report." He argues that he was "living openly within the county[,]" "was arrested at his mother's house[,]" and was "working within Lauderdale and Tipton counties[,]" such that his failure to report did not amount to absconding. He suggests that he is "amenable to continued probation" and that this court should reverse the trial court's finding that he

absconded from probation and "remand the case back to the trial court as a technical violation."

The State responds that the trial court properly revoked Defendant's probation for absconding when Defendant "did not take reasonable steps to contact his supervisor and his probation officer could not locate him for two months." We agree with the State.

If a trial court places sufficient findings and the reasons for its decisions as to the consequence on the record, this court's standard of review is abuse of discretion with a presumption of reasonableness. *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). Probation revocation decisions involve "a two-step consideration on the part of the trial court." *Id*. at 757. The first step is for the trial court to determine whether to revoke probation, and the second step is for the court to determine the appropriate consequence. *Id*. When deciding what consequence to impose upon revocation, the trial court should consider factors such as "the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character." *Id*. at 759 n. 5.

"If the trial judge finds by a preponderance of the evidence that the defendant has violated the conditions of probation and suspension of sentence, then the court may revoke the defendant's probation and suspension of sentence, in full or in part, pursuant to § 40-35-310." Tenn. Code Ann. § 40-35-311(d)(1). Notwithstanding subdivision (d)(1), the probation statute provides for two categories of probation violations, technical and non-technical, with differing penalties for both. *State v. Walden*, No. M2022-00255-CCA-R3-CD, 2022 WL 17730431, at *3 (Tenn. Crim. App. Dec. 16, 2022). A technical violation "means an act that violates the terms or conditions of probation but does not constitute" an enumerated non-technical violation. Tenn. Code Ann. § 40-35-311(g). A trial court may not revoke a defendant's probation and suspension of sentence for a felony offense, temporarily or otherwise, based upon one instance of a technical violation. Tenn. Code Ann. § 40-35-311(d)(2).

The following are classified as non-technical violations: a defendant's commission of a new felony or a new Class A misdemeanor, a zero tolerance violation as defined by the Department of Correction community supervision matrix, absconding, or contacting the defendant's victim in violation of a condition of probation. Tenn. Code Ann. § 40-35-311(e)(2).

"[A] defendant who absconds commits a non-technical violation of probation and may be subject to a full revocation of the suspended sentence even without prior violations or revocations." *State v. Rand*, 696 S.W.3d 98, 104 (Tenn. Crim. App. 2024). In *Rand*, this court held that "'abscond'" means "'[t]o hide, conceal, or absent oneself clandestinely, with the intent to avoid legal process.'" *Id*. (quoting *State v. Wakefield*, No. W2003-00892-

CCA-R3-CD, 2003 WL 22848965, at *1 (Tenn. Crim. App. Nov. 25, 2003)).  As such, absconding goes "beyond a single missed meeting where the probationer continues to report," but rather it refers to "the probationer's intent to avoid supervision more generally."  *Id*.  To find that a defendant subject to probation has absconded, this court has previously considered several factors, including "the extent to which the probationer has failed to use reasonable efforts to return contact or submit to supervision after knowledge (or a belief) that supervision has been attempting to communicate with the probationer," "the length of time that the probationer has intentionally or knowingly remained out of contact with supervision," and "the degree to which other violations support the inference that the probationer's hiding, concealment, or absence may be to avoid legal process or supervision."  *Id*. at 104-05 (citations omitted).

### 1. Violation determination

In this case, Defendant stipulated to the allegations in the violation of probation warrant but asserted that he had not absconded and that his violation was merely a technical one.  The trial court, however, properly concluded that Defendant absconded from supervision.  As found by the trial court, Defendant never reported for intake when he was released from jail, and he could not be located or contacted for two months (November and December 2024), during which time his probation officer attempted a home visit.  The record shows that Defendant consistently failed to report or use available means, such as his phone, to contact his probation officer.  Defendant acknowledged that he had been aware of his probation officer's repeated attempts to contact him.  Further, he acknowledged that it had been his obligation to maintain regular contact with his probation officer.  Defendant also admitted that, had he asked, Mr. Douglas would have provided him with transportation to the probation office.  Defendant's conduct certainly went "beyond a single missed meeting[,]" *Rand*, 696 S.W.3d at 104, and it was sufficient for the trial court to find that Defendant committed the non-technical violation of absconding.

### 2. Consequence determination

In revoking Defendant's probation and ordering him to serve his sentence, the trial court considered Defendant's previous attempts at probation, noting "really this is his fourth attempt.  The first attempt was to allow him to do weekends, he didn't do it.  Then he absconded, put in jail for 90 days then he absconded, put in jail for 274 days and now here we are again."  The court also considered Defendant's extensive criminal history, which consisted of eight felony and six misdemeanor convictions.  The court concluded that Defendant was not a suitable candidate for probation, stating, "At the end of the day, the [c]ourt's orders have to mean something.  And at this point, you haven't shown that they mean anything to you.  That you're going to do what you want to do, when you want to do it."

Here, Defendant's frequent and recent inability to successfully complete probation supports the trial court's imposition of the original sentence. The trial court considered the appropriate factors and made the proper findings and did not abuse its discretion when it revoked Defendant's probation in full. Moreover, even if Defendant had committed a technical violation only, the trial court had the statutory authority to order his sentence into effect because of the numerous prior violations and the fact that Defendant had repeatedly served time in confinement and reoffended shortly after probation was reinstated. Defendant is not entitled to relief.

## Conclusion

Based upon the foregoing, we affirm the judgment of the trial court.


s/*Robert L. Holloway, Jr.*
ROBERT L. HOLLOWAY, JR., JUDGE